UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZACHERY CHRISTENSON,

        Plaintiff,

v.

        Civil Case No. 17-13445
        Honorable Linda V. Parker

LOUIS COOK and THOMAS PLUMB,

        Defendants.
_____/

# OPINION AND ORDER GRANTING OFFICER PLUMB'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this lawsuit on October 23, 2017, alleging that Defendants used excessive force against him in violation of federal and state law. Defendants are Flushing Township Police Officer Louis Cook ("Officer Cook") and City of Flushing Police Officer Thomas Plumb ("Officer Plumb"). Presently pending before the Court is Officer Plumb's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 27.) The motion has been fully briefed. (ECF Nos. 29, 30.) Finding the facts and legal arguments sufficiently presented in the parties' submissions, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting Officer Plumb's motion.

## II. Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court generally must accept

as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II. Factual and Procedural Background

On July 24, 2017, Plaintiff was at his home, which he rented in Flushing Township, Michigan. In the late afternoon or early evening, he was visited by his friends Cody Arwood and Brook Rose, and their friends, Edward and Bryanna Owens. Before they arrived and while they were at Plaintiff's house, Plaintiff consumed three 28-ounce beers.

At around nine o'clock in the evening, Plaintiff became upset with Cody and Brook because he thought they were injecting heroin while locked in his bathroom. An argument ensued, and Cody and Brook left the home. While leaving, Cody broke the glass window on the front screen door. (Def.'s Mot. Ex. 1 at 29-30, ECF No. 27-2 at Pg ID 179-180.) Plaintiff testified that Cody also broke Plaintiff's cell phone and then returned and broke every window in his house.[1] (*Id*. at 29-30, 132, Pg ID 179-80, 205.)

---

[1] Bryanna Owens testified that Plaintiff was the one who broke the windows (except for the front screen door window), which he did with an ice scraper and because he was upset. (Def.'s Mot. Ex. 2 at 14, ECF No. 27-3 at Pg ID 225.) 911 was called during the evening and, according to the dispatch records, the caller told the 911 operator that Plaintiff was breaking his windows. (*Id.* Ex. 4 at 1, ECF No. 27-5 at Pg ID 259.) Bryanna's husband, Edward Owen, also testified that Plaintiff had run around the house breaking the windows. (*Id.* Ex. 7 at 17, ECF No. 27-8 at Pg ID 309.) Plaintiff's mother, Teresa Christenson, came to the house after Cody and Brook left and as Bryanna, Edward, and Plaintiff were returning in Edward's

3

Bryanna Owens testified that Plaintiff was very upset and, after trying to call Cody, threw his cell phone on the cement floor of the front porch and broke it. (Def.'s Mot. Ex. 2 at 12, ECF No. 27-3 at Pg ID 224.) Bryanna used her cell phone to call Plaintiff's mom, Teresa Christenson, who said she would come over. (*Id*.) Bryanna also called 911 at approximately 9:45 p.m. (*Id*. at 15, Pg ID 225; Def.'s Mot. Ex. 4 at 1, ECF No. 27-5 at Pg ID 259.) The 911 operator's dispatch requesting police assistance at Plaintiff's address described an intoxicated individual, a gun, and windows being broken.[2] (Def.'s Mot. Ex. 3 at 11, ECF No. 27-4 at Pg ID 250; *Id.* Ex. 4, ECF No. 27-5 at Pg ID 259.) Mrs. Christenson arrived at Plaintiff's home while Bryanna was talking to the 911 operator. (*Id.* Ex. 4, ECF No. 27-5 at Pg ID 259.) Defendants responded to the 911 call in separate patrol cars.

When Defendants arrived at Plaintiff's home, Plaintiff was still very upset, was yelling, and "hard to talk to." (Def.'s Mot. Ex. 1 at 37-38, 103, ECF No. 27-2 at Pg ID 181-82, 198.) Defendants approached Plaintiff in the backyard, near a bonfire. Officer Cook told Plaintiff several times to stop yelling and to sit down,

---

truck after going to look for Cody. Mrs. Christenson testified that when she pulled up to the house, she saw shadows at the side of the house and heard glass breaking. (*Id*. Ex. 6 at 20-21, ECD No. 27-7 at Pg ID 282.)

[2] Mrs. Christenson, who arrived at Plaintiff's home while Brook was speaking with the 911 operator, was carrying a gun. (*See* Def.'s Mot., Ex. 2 at 17, 28, ECF No. 27-3 at Pg ID 226, 228.) Mrs. Christenson put the gun back in her car before police officers arrived. (*Id.* at 31, Pg ID 229.)

but Plaintiff refused. (*Id*. at 102, Pg ID 198; *Id.* Ex. 5 at 35, 38, ECF No. 27-6 at Pg ID 286, 287.) Mrs. Christenson acknowledged during her deposition that Plaintiff was "out of control" when the officers arrived, "was ranting and raving," and "would not calm down." (*Id.* Ex. 6 at 35, ECF No. 27-7 at Pg ID 286.) Officer Cook told Plaintiff that he needed to go to the hospital to get checked out.[3] (*Id.* Ex 5 at 28, ECF No. 27-5 at Pg ID 269.) According to Defendants and Bryanna, Plaintiff got very upset in response and spit or tried to spit on his mother. (*Id*. at 30, Pg ID 270; *Id.* Ex. 2 at 49, ECF No. 27-3 at Pg ID 234; *Id.* Ex. 3 at 16, ECF No. 27-4 at Pg ID 251.) Officer Cook then attempted to handcuff Plaintiff and told him that [spitting on his mother] was not going to be tolerated and/or that he needed to show more respect to his mom. (*Id.* Ex. 5 at 31, ECF No. 27-6 at Pg ID 270; *Id*. Ex. 2 at 52, ECF No. 27-3 at 234; *Id*. Ex. 3 at 16, ECF No. 27-4 at Pg ID 251.)

Defendants and Bryanna testified that Plaintiff became aggressive and resisted when Officer Cook attempted to handcuff him. (*Id*. Ex. 2 at 52, ECF No. 27-3 at Pg ID 234; Ex. 3 at 16, ECF No. 27-4 at Pg ID 251; Ex. 5 at 31, ECF No.

---

[3] Officer Cook testified that he was concerned because Plaintiff was injured, intoxicated, and had made several comments about wanting to die. (Def.'s Mot. Ex. 5 at 28, ECF No. 27-5 at Pg ID 269.) Before the officers arrived, Plaintiff had been stepping on the glass from the broken windows in bare feet and had fallen down the front porch steps where there was glass. (*Id.* Ex. 2 at 21, 32, ECF No. 27-3 at Pg ID 227-29; *Id.* Ex. 7 at 23, ECF No. 27-8 at Pg ID 310.) He had glass in his arms, knees, and feet and was bleeding.

5

27-6 at Pg ID 270.) Plaintiff, however, testified that he was compliant while being handcuffed and did not resist. (*Id*. Ex. 1 at 42-43, ECF No. 27-2 at Pg ID 183.) After Plaintiff was handcuffed, Defendants began walking him to the front of the house toward Officer Cook's patrol car, which was parked in the driveway.

According to Plaintiff, Officer Cook had his arm on Plaintiff's left shoulder as they proceeded down the home's front driveway and Officer Plumb was behind them. (Def.'s Mot. Ex. 1 at 43, ECF No. 1 at Pg ID 183.) Plaintiff further testified that Officer Plumb was not touching him in any way. (*Id.* at 44, Pg ID 183.) Defendants testified that only Officer Cook escorted Plaintiff to the front of the house. (*Id.* Ex. 3 at 18-20, ECF No. 27-4 at Pg ID 252; *Id*. Ex. 5 at 32, ECF No. 27-6 at Pg ID 270.) Officer Plumb explained that he was not immediately behind Plaintiff and Officer Cook as they walked to the patrol car; instead, he remained in the backyard with Mrs. Christenson. (*Id*. Ex. 3 at 18-20, ECF No. 27-4 at Pg ID 252.)

Plaintiff claims that Officer Cook suddenly shoved him to the ground from his left shoulder and then said, "This was for disrespecting your mother." (*Id*. Ex. 1 at 44, ECF No. 27-2 at Pg ID 183.) According to Plaintiff, he was then held to the ground so he could not "wiggle around and get back up" for about a minute. (*Id*. at 47, Pg ID 184.) Plaintiff "assume[d]" both officers were holding him down, but he could not see who was on top of him. (*Id*.) He felt pressure on the back of

6

his head and in the middle of his spine, but did not know how many hands were on him. (*Id.* at 47, 128, Pg ID 184, 204.) Plaintiff testified that he was not punched, kicked, or struck. (*Id.* at 48, Pg ID 184.) When he fell, Plaintiff hit the gravel driveway face first and sustained a broken nose and a cut to his nose and chin. (*Id.* at 46, Pg ID 184.) The officers then helped Plaintiff off the ground. (*Id.* at 48, Pg ID 184.) An ambulance arrived shortly thereafter and transported Plaintiff to the hospital. (*Id.*)

When asked what happened as Plaintiff was being walked to the patrol car, Bryanna testified that Plaintiff was becoming agitated and yelling and was stumbling as he walked. (Def.'s Mot. Ex. 2 at 55, 57, 63, ECF No. 27-3 at Pg ID 235-237.) Bryanna further testified that Plaintiff attempted to spit on one of the officers. (*Id.* at 57, Pg ID 236.) Bryanna turned her attention away from Plaintiff and Defendants, but then saw Plaintiff on the ground with Officer Cook and possibly Officer Plumb holding him down.[4] (*Id.* at 57-58, Pg ID 236.) She did not see how they ended up on the ground. (*Id.*) Bryanna testified that Plaintiff was struggling while on the ground and Defendants were trying to keep him in place. (*Id.* at 74, Pg ID 240.)

---

[4] Bryanna testified that she could see Officer Cook touching and holding Plaintiff down, but it only "looked like" Officer Plumb was doing so too. (Def.'s Mot. Ex. 2 at 74, ECF No. 27-3 at Pg ID 240.) She could not see Officer Plumb's hands. (*Id.* at 74, 86, Pg ID 240, 243.)

7

Edward testified that as Plaintiff was being escorted down the driveway, he became agitated and spit at Officer Cook. (Def.'s Mot. Ex. 7 at 38-40, 42, ECF No. 27-8 at Pg ID 314-315.) Edward indicated that Officer Cook was "saying stuff" that was aggravating Plaintiff, such as that he had been at Plaintiff's house before and that Plaintiff was a troublemaker. (*Id.* at 33, 37, 56, ECF No. 27-8 at Pg ID 313-14, 318.) According to Edward, Plaintiff then stumbled and picked up one of his feet and Officer Cook grabbed Plaintiff and tripped him down to the ground. (*Id.*) Edward then saw both officers attempting to gain control of Plaintiff, who was "squirming" or "struggling" against them. (*Id.* at 44, 45-46, Pg ID 315-16.) Once Plaintiff stopped struggling, Defendants got up. (*Id.* at 44-47, Pg ID 315-16.)

According to the 911 dispatch record, the officers had requested an ambulance to transport Plaintiff to the hospital for "detox" approximately fifteen minutes after arriving on the scene. (*See id.* Ex. 4 at 2, ECF No. 27-5 at Pg ID 260.) The ambulance arrived shortly after Plaintiff claims he was pushed to the ground. (Def.'s Mot. Ex. 1 at 48, ECF No. 27-2 at Pg ID 184.) Plaintiff was taken to Hurley Hospital and released the following day. (*Id.* at 50, Pg ID 185.) Plaintiff was charged with disturbing the peace as a result of the incident, to which he pled guilty. (*Id.* at 122, Pg ID 203.)

Several months later, Plaintiff filed this lawsuit against Defendants. (Compl., ECF No. 1.) Plaintiff filed an Amended Complaint on February 8, 2018.

8

(Am. Compl., ECF No. 13.) In his Amended Complaint, Plaintiff asserts the following claims against Defendants: (I) excessive force in violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983; (II) "failure to intervene" to protect Plaintiff from excessive force under § 1983; (III) assault and battery; and (IV) intentional infliction of emotional distress. (*Id.*)

Office Plumb filed the pending motion for summary judgment on October 31, 2018. After the motion was fully briefed, the parties stipulated to the dismissal of Plaintiff's claims against Officer Cook with prejudice. The Court entered a stipulated order dismissing Officer Cook on December 19, 2018. (ECF No. 31.)

### III. Applicable Law and Analysis

#### A. 42 U.S.C. § 1983

In his § 1983 claims, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights by using excessive force against him and/or by failing to intervene to prevent the violation of his rights. Plaintiff's claims are not based on his handcuffing, but rather on Defendants' alleged conduct of throwing him to the ground and forcing his face into the gravel. (*See* Am. Compl. ¶¶ 17-18, ECF No. 13 at Pg ID 65.)

Whether excessive forced was used is assessed under "'an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants.'" *Brown v. Lewis*, 779

9

F.3d 401, 418 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)). "Three factors guide the reasonableness test: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officef or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013)) (additional quotation marks and brackets omitted). "'These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight.'" *Id*. (quoting *Burgess*, 735 F.3d at 472).

"Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Thus, the plaintiff must show that each defendant "was 'personally involved' in the use of excessive force[]" against him. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Binay*, 601 F.3d at 650). Mere presence at the scene, without a showing of direct responsibility for the alleged constitutional violation, generally will not subject an officer to liability. *Id*. (citing *Ghandi v. Police Dep't of Detroit*, 747 F.3d 338, 352 (6th Cir. 1984)). Nevertheless, a police officer may be liable due to a failure to act to prevent another officer's use of excessive force if "'(1) the officer observed or had reason to know that excessive force would be or was being

10

used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"[5] *Id.* at 620 (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)) (additional quotation marks and citation omitted).

Even when viewed in a light most favorable to Plaintiff, the facts do not support an excessive force claim against Officer Plumb. There is no evidence suggesting that Officer Plumb was involved in pushing or shoving Plaintiff to the ground. Plaintiff testified that Officer Plumb did not touch him in any way as he was being walked to the patrol car. Defendants testified that Officer Plumb was not with Plaintiff and Officer Cook when Plaintiff fell to the ground. Bryanna testified that both officers brought Plaintiff down the driveway, but she did not see how Plaintiff ended up on the ground.

A reasonable jury also could not conclude that Officer Plumb used excessive force against Plaintiff once he was on the ground. Plaintiff testified that he was walking calmly and quietly and not resisting the officers after being pushed to the ground. Contrastingly, those who witnessed Plaintiff's behavior (Bryanna,

---

[5] Liability for the failure to intervene may also attach if the officer actively participated in the use of force or supervised the officer who used excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Officer Plumb was not Officer Cook's supervisor (they worked for different police departments) and, as discussed *infra*, Officer Plumb did not actively participate in the use of excessive force against Plaintiff.

11

Edward, and Officer Cook)[6] testified that Plaintiff was agitated, yelling, intoxicated, tried to spit on Officer Cook, and then was kicking and struggling once on the ground.

Moreover, the only witness who could describe Officer Plumb's actions while Plaintiff was on the ground was Edward, who testified that Officer Plumb got on Plaintiff's legs to keep him from moving and struggling. There is no evidence that Officer Plumb forced Plaintiff's face into the gravel driveway—the conduct which forms the basis of Plaintiff's excessive force claim aside from throwing him to the ground. Finally, the evidence reflects that any force used against Plaintiff while he was on the ground lasted for at most a couple of minutes and only until Plaintiff stopped struggling and kicking. Once Plaintiff stopped resisting, the officers got up.

With respect to Officer Plumb's alleged failure to intervene, Plaintiff testified that Officer Cook shoved him suddenly and without warning. The facts, therefore, do not suggest that Officer Plumb had sufficient time to act to prevent the shove. "Merely being in the presence of an officer who suddenly shoves

---

[6] Mrs. Christenson and Officer Plumb testified that they were still in the backyard when Officer Cook walked Plaintiff to one of the patrol cars and Officer Plumb testified that he went to Officer Cook and Plaintiff only after they fell to the ground. (Def.'s Mot. Ex. 3 at 18-21, ECF No. 27-4 at Pg ID 252; *Id.* Ex. 6 at 46, 67, ECF No. 27-7 at Pg ID 289, 294.)

someone is not the same as standing by idly while a group of officers surrounds and beats someone." *White v. Bell*, 656 F. App'x 745, 749 (6th Cir. 2016).

To the extent the record supports Plaintiff's allegation that Officer Cook "gratuitously force[d his] face into the gravel ground" (*see* Am. Compl. ¶ 18, ECF No. 13 at Pg ID 66) thus constituting excessive force, the record does not support a finding that Officer Plumb had the opportunity to intercede in Officer Cook's actions. Moreover, while this was allegedly happening, Officer Plumb was trying to gain control of Plaintiff and prevent him from kicking at the officers. Plaintiff testified that Officer Cook maintained pressure on his head for a minute (Def's Mot. Ex 1 at 19-21, ECF No 27-2 at Pg ID 200) Edward testified that it was "ten, fifteen seconds, maybe"—until Plaintiff stopped squirming. (Def.'s Mot. Ex. 7 at 53, ECF No. 23-8 at Pg ID 318.) Notwithstanding the conflicting testimony, the record is void of evidence suggesting that Officer Plumb was *in a position* to observe Officer Cook's actions.

For these reasons, Officer Plumb is entitled to summary judgment with respect to Plaintiff's § 1983 claims (Counts I and II).

**B.   Assault and Battery**

Under Michigan law, "a police officer may use reasonable force when making an arrest." *Brewer v. Perrin*, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984); *see also VanVorous v. Burmeister*, 687 N.W.2d 132, 141 (Mich. Ct. App. 2004).

The standard a court uses to determine whether the force was reasonable for an assault and battery claim under Michigan law is the same standard the court uses for a § 1983 excessive force claim. *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (citing *Landis v. Baker*, 297 F. App'x 453, 466 (6th Cir. 2008)). As discussed above, the record does not support that Officer Plumb used excessive force.

Officer Plumb therefore is also entitled to summary judgment with respect to Plaintiff's assault and battery claim (Count III).

## C. Intentional Infliction of Emotional Distress

To prove his intentional infliction of emotional distress claim, Plaintiff must show that that Defendants intentionally or recklessly engaged in extreme and outrageous conduct that caused him severe emotional distress. *Downing v. Life Time Fitness*, 483 F. App'x 12, 18 (6th Cir. 2012) (citing *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985)). In *Roberts*, the Michigan Supreme Court described "extreme and outrageous conduct" as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the

facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

374 N.W.2d at 908-09. The record does not reflect any conduct by Officer Plumb that could be deemed "extreme" or "outrageous." As such, he is entitled to summary judgment with respect to this claim (Count IV), as well.

## IV. Conclusion

For the reasons stated, the Court holds that Officer Plumb is entitled to summary judgment with respect to the claims asserted in Plaintiff's Amended Complaint.

Accordingly,

**IT IS ORDERED**, that Officer Plumb's Motion for Summary Judgment (ECF No. 27) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2019